UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
         v.                              :   **MEMORANDUM & ORDER**
                                         :   15-CR-0580 (WFK)
OMAR CHRISTOPHER MILLER,                 :
                                         :
                    Defendant.           :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 26, 2016, Omar Christopher Miller ("Defendant") was convicted by a jury of one count of visa fraud, in violation of 18 U.S.C. § 1546(a). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to twelve (12) months of incarceration served], 3 years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On May 12, 2015, the United States filed a Complaint against Defendant, alleging he had knowingly subscribed as true false statements with respect to material facts in an immigration application and knowingly presented an application containing false statements. *See* Compl. at 1, ECF No. 1. On November 12, 2015, the United States indicted Defendant on one count of visa fraud, in violation of 18 U.S.C. § 1546(a). *See* Indictment, ECF No. 15. On August 26, 2016, after a trial before this Court, a jury found Defendant guilty of the sole count of the Indictment. *See* Verdict Sheet, ECF No. 63. This Court personally observed the testimony, both oral and documentary, as well as the demeanor of all the witnesses. Those witnesses included Mr. Andrew Daehne, a foreign service office employed by the United States Department of State, Detective Inspector of the Jamaica Constabulary Force who had worked for the JCF for more than twenty-six (26) years at the time of the trial; Mr. Percival Anderson, Deputy Superintendent of the JCF who at the time of the trial had been employed more than twenty nine

1

years and four months; Mr. Derrick Powell, Inspector of The JCF who had been an Inspector with the JCF for more than sixteen years at the time of trial and who had been with the JCF for thirty-five years at the time of trial; Mr. Carmine Borges who served as the Supervisory Customs and Border Protection Officer at the time of the trial; Mr. Eric Klaussmann, Special Agent for the United States Diplomatic Security Service of The State Department of the United States; and Valerie Neita-Robertson, an Attorney licensed to practice in Jamaica called by The Defendant who when asked by this Court at page 347, lines 7 through 19 of the trial transcript the following questions gave the following answers:

"The Court: If you are arrested and then you subsequently are acquitted, does that mean you were never arrested?

"The Witness: if you – no. If you are arrested and charged.

"The Court: Yes.

"The Witness: And then you are acquitted."

"The Court: Yes."

"The Witness: It means you were arrested and charged you went before a court."

"The Court: Okay. You can be acquitted, but you still would have been arrested.

"The Witness: Technically speaking, yes."

This Court entered judgment of guilty on the unanimous jury verdict returned in this case.

The Court now sentences the Defendant and sets forth its reasons for Defendant's sentence using the rubric of the § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

# DISCUSSION

## I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 14, 1976, in Kingston, Jamaica, where he resided until 2013. *See* Presentence Investigation Report ("PSR") ¶¶ 27, 29, ECF No. 65. Defendant's parents are in a long-term partnership and, although they never married, continue to reside together and are in good health. *Id.* ¶ 27. Defendant and his five siblings were raised in a

3

middle-income household and provided with basic necessities. *Id.* ¶ 28. In 1992, Defendant graduated from Denham Town High School in Kingston with a high school diploma. *Id.* ¶ 42. From approximately 1994, when Defendant was eighteen, until 2013, Defendant was employed as a reggae music writer and artist and also worked as a club promoter in Kingston. *Id.* ¶ 44.

In 1996, at the age of nineteen, Defendant was arrested and charged with Shooting with Intent and Illegal Possession of a Firearm and Ammunition by the Jamaican Constabulary Force ("JCF") in Kingston. *Id.* ¶¶ 5, 24. He was held in custody for approximately one year while awaiting trial and was released after being acquitted at trial in the Supreme Court of Jamaica in 1997. At the age of twenty-five, Defendant began smoking marijuana and used the drug once per day until approximately one year prior to his arrest for the instant offense. *Id.* ¶ 41. In 2010, Defendant surrendered to JCF officials after receiving a notice that the police were looking to question him in connection with two shooting incidents in Kingston, which had resulted in the deaths of four people. PSR ¶¶ 5, 25. He was detained for several weeks, Defendant was ultimately released without being charged with a crime. *Id.*

On February 7, 2013, Defendant entered the United States via John F. Kennedy International Airport in Queens, New York, on an O-2 visa that had been issued on April 23, 2012, by the U.S. Embassy in Kingston.[1] *Id.* ¶ 3. The Embassy had issued the visa so that

---

[1] An O-2 visa is a temporary visa for an individual to assist in a specific event or performance by another individual who has an extraordinary ability. PSR ¶ 3. In determining whether or not to issue visas, U.S. Department of State consular officials must make numerous determinations. *Id.* One finding the consular officials must make is whether the individual seeking the visa intends to use the visa to immigrate to the United States illegally and not for the stated purpose. *Id.* Consular officers must be satisfied that the applicant has overcome a presumption that the visa will be used for illegal immigration into the United States before issuing the visa. *Id.* Consular officials must also make determinations about the suitability of visa-seeking individuals, or entry into the United States, insofar as the safety and security of the American people and society. *Id.* In making such evaluations, consular officials examine visa applicants' criminal histories, query intelligence databases, and verify information provided by applicants, among other things. *Id.*

Defendant and his band could perform a series of concerts in Florida. *Id.* ¶ 4. After his visa expired, Defendant failed to return to Jamaica as he was required to do. *Id.* Instead, he settled in Philadelphia, Pennsylvania, with Yolanda Miller (née Carchidi), whom he married in 2014. *Id.* ¶¶ 4, 29-30. Defendant has six children from five prior relationships. *Id.* ¶¶ 31, 34-37. Five of Defendant's children reside with their mothers—four in Jamaica and one New Jersey—while his youngest son currently resides with Defendant in New Jersey, *id.* ¶¶ 29, 31, 34-37.

On March 15, 2015, Defendant submitted a false and misleading application to the U.S. Citizenship and Immigration Services ("USCIS") for permanent residency. In the course of processing Defendant's application, USCIS officials referred the matter to Homeland Security Investigations ("HSI") for further investigation, particularly regarding the legitimacy of Defendant's marriage. *Id.* During the investigation, HSI special agents discovered that Defendant had made false statements, deliberately lying on his application for permanent residency, his O-2 visa application, and a prior B1/B2 tourist visa application in 2009.[2] *Id.* Special agents with the Diplomatic Security Service ("DSS") then joined the investigation. *Id.* On the aforementioned applications, Defendant had falsely denied any prior arrests and falsely denied being known by any other names or aliases. *Id.* ¶ 5. Those statements were lies. The investigation revealed that in truth the Defendant had been arrested twice before in Jamaica under the name Andy Fowl, *id.* ¶¶ 5, 24-25. Defendant deliberately lied seeking to hide the existence of these prior arrests and his use of the name Andy Fowl on his visa and permanent residency applications. *Id.* ¶ 5.

---

[2] The 2009 visa application was denied because the consular officer was not persuaded that Defendant was not going to immigrate to the United States illegally. PSR ¶ 4.

5

On July 15, 2015, Defendant was arrested by DSS and HSI special agents and U.S. Marshals at his home in Philadelphia, Pennsylvania. *Id.* ¶ 6. In a post-arrest statement, Defendant admitted to using the alias Andy Fowl in the past and to a prior arrest in 2010. *Id.*

On November 4, 2015, Defendant was released on a $100,000 unsecured bond with pretrial reporting conditions, *id.* at 1, and he has been fully compliant with the conditions of his release ever since, *id.* ¶ 2.

On February 25, 2016, Defendant submitted an application for asylum to USCIS on which he admitted that he had in fact been known by the alias Andy and had in fact been previously been arrested in 1995. He continued to lie, however, about his use of the alias Andy Fowl. He also continued to lie about his 2010 arrest. *Id.* ¶ 5.

On August 26, 2016, Defendant was found guilty by jury verdict of a single count of visa fraud after a trial before this Court. *Id.* ¶ 1.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. It also reflects the seriousness conveyed to this court by the numerous members of the Jamaica Police Forces who traveled to this Court to document their understanding as the Jamaican Police Constabulary of

Defendant's numerous violent shooting charges in Jamaica. This Court has broad discretion to consider this conduct in imposing sentence for the instant offense. *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012) ("A district court may treat acquitted conduct as relevant conduct at sentencing, provided that it finds by a preponderance of the evidence that the defendant committed the conduct."). There was more than ample testamentary and documentary evidence presented to this Court throughout the Defendant's trial for visa fraud establishing be a preponderance of the evidence on a clear and convincing basis that the JCF had probable cause to arrest Defendant for the shooting, including testimony by the arresting JCF officer to that effect. Trial Tr. 159:1-162:19; 186:8-187:12 (testimony regarding Defendant's arrest); 173:21-180:3; 186:19-190:18 (testimony regarding Defendant's court proceedings). This Court finds Defendant's prior involvement in such a serious and violent crime supports an upward variance in sentencing him for the instant offense because, as discussed above, his deliberate visa fraud involved making false statements regarding this arrest and deliberate lies to hide his other called (OC) or also known as (a/k/a) name: Andy Fowl.

**The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of visa fraud, in violation of 18 U.S.C. § 1546(a), for which he faces a maximum term of imprisonment of ten years. 18 U.S.C. § 1546(a). He may also be sentenced to a term of supervised release of not more than three years, *id.* § 3583(b)(2), and he is eligible for not less than one nor more than five years of probation, *id.* § 3561(c)(1), with a fine, restitution, or community service imposed absent extraordinary circumstances, *id.* § 3563(a)(2). In addition, Defendant faces a maximum fine of $250,000.00, *id.* § 3571(b), and

payment of a special assessment of $100.00, *id.* § 3013. The Court's sentence falls within the kinds of sentences available for Defendant.

### C. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2L2.2(a) applies to violations of 18 U.S.C. § 1546(a) and sets a base offense level of eight. *See* United States Sentencing Commission, *Guidelines Manual*, § 2L2.2 (Nov. 2016) ("USSG" or "Guidelines"). Because no adjustments apply, Defendant's total adjusted offense level is also eight. The Defendant has been arrested in Jamaica and has a criminal history category of one, *see* USSG ch. 5, pt. A.

Given a total offense level of eight and a criminal history category of one, the Guidelines suggest a term of imprisonment of zero to six months. USSG ch. 5, pt. A. Defendant may also be sentenced to: a term of supervised release of one to three years, *id.* § 5D1.2(a)(2); a fine of between $1,000.00 and $10,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is eligible for a term of probation of not less than one nor more than five years. *Id.* § 5B1.2(a)(1).

The U.S. Probation Department recommends a sentence of time served followed by three years of supervised release with special conditions in this case. The Defendant's counsel also requests a sentence of time served or, in the alternative, a sentence of home detention, to allow Defendant to continue to care for his son and provide the significant emotional and developmental support he requires. *See* Def.'s Sentencing Mem. at 2-4, ECF No. 70. The

8

Government more appropriately requests a sentence of twelve months imprisonment, which would represent an upward variance from the Guidelines, "in order to reflect the serious criminal conduct of which the defendant was convicted," visa fraud, as well as similar alleged misrepresentations made on documents related to other immigration applications, for which Defendant was not charged. *See* Gov't Sentencing Mem. at 1, 4, ECF No. 69. The Government also asserts that a sentence above the Guidelines is warranted to deter Defendant and others from similar conduct in the future. *Id.* at 4. The Government is wise to do so. Lying to American immigration authorities about prior arrests for shootings and lying to American immigration authorities presents a serious challenge to national security and principled law enforcement.

### D. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Guidelines § 4A1.3 contains a pertinent policy statement regarding departures based on the inadequacy of a defendant's criminal history category. Specifically, it provides that, "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted," and notes that such information may include "[p]rior similar adult criminal conduct not resulting in a criminal conviction." USSG § 4A1.3(a)(1), (a)(2)(E). Here, as described above, Defendant also allegedly submitted false statements in connection with prior visa, permanent resident, and asylum applications. *See* PSR ¶¶ 4-5, 64. This activity constitutes adult criminal conduct similar to the instant offense, which did not result in any criminal convictions and could not be factored into

the Guidelines calculation for the instant offense. *See id.* ¶ 64. Consequently, it warrants an upward departure. *See id.*

### E. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### F. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in this case, *see id.* § 3663.

## CONCLUSION

A sentence of 12 months of incarceration to be followed by three years of supervised release, and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2017
       Brooklyn, New York