UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,        :
        :
    v.        :    **MEMORANDUM & ORDER**
        :    15-CR-0580 (WFK)
OMAR CHRISTOPHER MILLER,        :
        :
        Defendant.    :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 26, 2016, Omar Christopher Miller ("Defendant") was convicted by a jury of one count of visa fraud, in violation of 18 U.S.C. § 1546(a). On June 28, 2017, this Court sentenced Defendant to twelve months of imprisonment to be followed by three years of supervised release. On October 15, 2019, the U.S. Court of Appeals for the Second Circuit issued a mandate affirming the Court's judgment of conviction, but remanding the case for re-sentencing. The Court now re-sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served, no supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On May 12, 2015, the United States filed a Complaint against Defendant, alleging he had knowingly subscribed as true false statements with respect to material facts in an immigration application and knowingly presented an application containing false statements. *See* Compl. at 1, ECF No. 1. On November 12, 2015, the United States indicted Defendant on one count of visa fraud, in violation of 18 U.S.C. § 1546(a). *See* Indictment, ECF No. 15. On August 26, 2016, after a trial before this Court, a jury found Defendant guilty of the sole count of the Indictment. *See* Verdict Sheet, ECF No. 63. This Court personally observed the testimony, both oral and documentary, as well as the demeanor of all the witnesses.

On June 28, 2017, this Court sentenced Defendant to twelve months of imprisonment to be followed by three years of supervised release. Defendant appealed his conviction and sentence. On October 24, 2018, the U.S. Court of Appeals for the Second Circuit issued a

1

mandate affirming the Court's judgment of conviction, but remanding the case for re-sentencing. Specifically, the Second Circuit found the Court did not find by a preponderance of the evidence that Defendant participated in the 1996 shooting for which he was arrested. *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (requiring "that facts relevant to sentencing . . . be found by a preponderance of the evidence"). Accordingly, the Second Circuit Court remanded the case to the District Court for resentencing consistent with the Order. It also stated: "We leave it to the District Court to decide whether the other aggravating factor it identified—that Miller made similar misrepresentations in other official documents—is sufficient to support the sentence it originally imposed." *See United States v. Miller*, 17-CR-2140 (2d Oct. 24, 2018) (summary order).

Since his arrest on July 15, 2015, Defendant has served approximately six months of imprisonment, has been subject to electronic location monitoring and home incarceration for approximately four years, and has been subject to electronic location monitoring and a curfew for approximately one year. *See* Gov. Updated Sentencing Mem. ("Gov. Updated Mem."), ECF No. 128. During this time, Pretrial Services has consistently indicated that Defendant has been compliant with the restrictive conditions of his supervision and has regularly concurred with Defendant's requests to the Court for temporary modifications of those conditions to participate in family events and activities. *Id*. The Court now sentences the Defendant and sets forth its reasons for Defendant's sentence using the rubric of the § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.     Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]"  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

### II.    Analysis

#### A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

Defendant was born on August 14, 1976, in Kingston, Jamaica, where he resided until 2013.  *See* Presentence Investigation Report ("PSR") ¶¶ 27, 29, ECF No. 65.  Defendant's parents are in a long-term partnership and, although they never married, continue to reside together and are in good health.  *Id.* ¶ 27.  Defendant and his five siblings were raised in a middle-income household and provided with basic necessities.  *Id.* ¶ 28.  In 1992, Defendant

graduated from Denham Town High School in Kingston with a high school diploma. *Id.* ¶ 42. From approximately 1994, when Defendant was eighteen, until 2013, Defendant was employed as a reggae music writer and artist and also worked as a club promoter in Kingston. *Id.* ¶ 44.

In 1996, at the age of nineteen, Defendant was arrested and charged with Shooting with Intent and Illegal Possession of a Firearm and Ammunition by the Jamaican Constabulary Force ("JCF") in Kingston. *Id.* ¶¶ 5, 24. He was held in custody for approximately one year while awaiting trial and was released after being acquitted at trial in the Supreme Court of Jamaica in 1997. At the age of twenty-five, Defendant began smoking marijuana and used the drug once per day until approximately one year prior to his arrest for the instant offense. *Id.* ¶ 41. In 2010, Defendant surrendered to JCF officials after receiving a notice that the police were looking to question him in connection with two shooting incidents in Kingston, which had resulted in the deaths of four people. PSR ¶¶ 5, 25. He was detained for several weeks, but Defendant was ultimately released without being charged with a crime. *Id.*

On February 7, 2013, Defendant entered the United States via John F. Kennedy International Airport in Queens, New York, on an O-2 visa that had been issued on April 23, 2012, by the U.S. Embassy in Kingston.[1] *Id.* ¶ 3. The Embassy had issued the visa so that Defendant and his band could perform a series of concerts in Florida. *Id.* ¶ 4. After his visa

---

[1] An O-2 visa is a temporary visa for an individual to assist in a specific event or performance by another individual who has an extraordinary ability. PSR ¶ 3. In determining whether or not to issue visas, U.S. Department of State consular officials must make numerous determinations. *Id.* One finding the consular officials must make is whether the individual seeking the visa intends to use the visa to immigrate to the United States illegally and not for the stated purpose. *Id.* Consular officers must be satisfied that the applicant has overcome a presumption that the visa will be used for illegal immigration into the United States before issuing the visa. *Id.* Consular officials must also make determinations about the suitability of visa-seeking individuals, or entry into the United States, insofar as the safety and security of the American people and society. *Id.* In making such evaluations, consular officials examine visa applicants' criminal histories, query intelligence databases, and verify information provided by applicants, among other things. *Id.*

expired, Defendant failed to return to Jamaica as he was required to do. *Id.* Instead, he settled in Philadelphia, Pennsylvania, with Yolanda Miller (née Carchidi), whom he married in 2014. *Id.* ¶¶ 4, 29–30. Defendant has six children from five prior relationships. *Id.* ¶¶ 31, 34–37. Five of Defendant's children reside with their mothers—four in Jamaica and one New Jersey—while his youngest son currently resides with Defendant in New Jersey, *id.* ¶¶ 29, 31, 34–37.

On March 15, 2015, Defendant submitted a false and misleading application to the U.S. Citizenship and Immigration Services ("USCIS") for permanent residency. In the course of processing Defendant's application, USCIS officials referred the matter to Homeland Security Investigations ("HSI") for further investigation, particularly regarding the legitimacy of Defendant's marriage. *Id.* During the investigation, HSI special agents discovered that Defendant had made false statements, deliberately lying on his application for permanent residency, his O-2 visa application, and a prior B1/B2 tourist visa application in 2009.[2] *Id.* Special agents with the Diplomatic Security Service ("DSS") then joined the investigation. *Id.* On the aforementioned applications, Defendant had falsely denied any prior arrests and falsely denied being known by any other names or aliases. *Id.* ¶ 5. Those statements were lies. The investigation revealed that in truth the Defendant had been arrested twice before in Jamaica under the name Andy Fowl, *id.* ¶¶ 5, 24–25. Defendant deliberately lied seeking to hide the existence of these prior arrests and his use of the name Andy Fowl on his visa and permanent residency applications. *Id.* ¶ 5.

---

[2] The 2009 visa application was denied because the consular officer was not persuaded that Defendant was not going to immigrate to the United States illegally. PSR ¶ 4.

On July 15, 2015, Defendant was arrested by DSS and HSI special agents and U.S. Marshals at his home in Philadelphia, Pennsylvania. *Id.* ¶ 6. In a post-arrest statement, Defendant admitted to using the alias Andy Fowl in the past and for a prior arrest in 2010. *Id.*

On November 4, 2015, Defendant was released on a $100,000.00 unsecured bond with pretrial reporting conditions, *id.* ¶ 1, and he has been fully compliant with the conditions of his release ever since, *id.* ¶ 2.

On February 25, 2016, Defendant submitted an application for asylum to USCIS on which he admitted that he had in fact been known by the alias Andy and had in fact been previously arrested in 1995. He continued to lie, however, about his use of the alias Andy Fowl. He also continued to lie about his 2010 arrest. *Id.* ¶ 5. On August 26, 2016, Defendant was found guilty by jury verdict of a single count of visa fraud after a trial before this Court. *Id.* ¶ 1.

**B.  The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. This Court takes into account his deliberate visa fraud involved making false statements regarding this arrest and deliberate lies to hide his other called (OC) or also known as (a/k/a) name: Andy Fowl. In addition, the Court also considers Defendant's need to care for his autistic son, lack of previous

criminal convictions, and the lengthy period in which Defendant has complied with restrictive conditions of supervised release since his original sentencing.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of visa fraud, in violation of 18 U.S.C. § 1546(a), for which he faces a maximum term of imprisonment of ten years.  18 U.S.C. § 1546(a).  He may also be sentenced to a term of supervised release of not more than three years, *id.* § 3583(b)(2), and he is eligible for not less than one nor more than five years of probation, *id.* § 3561(c)(1), with a fine, restitution, or community service imposed absent extraordinary circumstances, *id.* § 3563(a)(2).  In addition, Defendant faces a maximum fine of $250,000.00, *id.* § 3571(b), and payment of a special assessment of $100.00, *id.* § 3013.  The Court's sentence falls within the kinds of sentences available for Defendant.

### D.  The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]"  18 U.S.C. § 3553(a)(4)(A).

All Parties agree that Guidelines § 2L2.2(a) applies to violations of 18 U.S.C. § 1546(a) and sets a base offense level of eight.  *See* United States Sentencing Commission, *Guidelines Manual*, § 2L2.2 (Nov. 2016) ("USSG" or "Guidelines").  Because no adjustments apply, Defendant's total adjusted offense level is also eight.  All parties also agree Defendant has a criminal history category of one, *see* USSG ch. 5, pt. A.

Given a total offense level of eight and a criminal history category of one, the Guidelines suggest a term of imprisonment of zero to six months.  USSG ch. 5, pt. A.  Defendant may also be sentenced to: a term of supervised release of one to three years, *id.* § 5D1.2(a)(2); a fine of between $1,000.00 and $10,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5.  The Guidelines further suggest Defendant is eligible for a term of probation of not less than one nor more than five years.  *Id.* § 5B1.2(a)(1).

The U.S. Probation Department originally recommended a sentence of time served followed by three years of supervised release with special conditions, and it has not filed any supplemental submission for re-sentencing.  Probation's Sentencing Recommendation at 1, ECF No. 65.  Defendant's counsel also requests a sentence of time served at the original sentencing, and he affirms that request now.  *See* Def.'s Updated Sentencing Mem. at 1, ECF No. 129.  In particular, defense counsel calls attention to the fact that "Mr. Miller has endured over two additional months in prison, two additional years of home incarceration, and nearly four additional years on an ankle bracelet, all while maintaining perfect compliance with these extremely strict release conditions." *Id.*  Accordingly, defense counsel also requests no supervised release term.  *Id.*  Although the Government originally requested a sentence of twelve months of imprisonment, an upward variance from the Guidelines, *see* Gov't Sentencing Mem. at 1, 4, ECF No. 69, the Government now recommends a sentence of time served due to the unique circumstances of the case:

> [O]ver four years since his original sentencing in June 2017, the defendant has either been held in custody or has been subject to onerous conditions of pretrial release that have severely curtailed his liberty. *See United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.").  Indeed, since his arrest on July 15, 2015, the defendant has served a total of 191 days in custody (equivalent to just over six months' imprisonment), has been subject to electronic location

monitoring and home incarceration for a total of 1,448 days (equivalent to just under 4 years), and has been subject to electronic location monitoring and a curfew for 660 days (equivalent to just under 1 year and 10 months). During this time, Pretrial Services has consistently indicated that the defendant has been compliant with the restrictive conditions of his supervision and has regularly concurred with the defendant's requests to the Court for temporary modifications of those conditions to participate in family events and activities.

*See* Gov. Updated Mem. at 3. Accordingly, the Government respectfully submits that a sentence of time served, equivalent to just over six months' imprisonment, at the high end of the applicable Guidelines sentencing range, is sufficient but not greater than necessary to achieve the purposes of sentencing set forth at 18 U.S.C. § 3553(a).

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The Court finds there is no pertinent policy statement to consider in this case.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in this case, *see id.* § 3663.

## CONCLUSION

With apologies to the Grateful Dead, this case has been one long strange trip. If the late Doctor Hunter S. Thompson were alive, his account of these proceedings might be titled "Fear and Loathing from Jamaica to the Second Circuit." The case is certainly worthy of treatment as a Gonzo epic: the Jamaica Shower Posse; Jamaican police officials coming to this Court to testify late into the evening; a jury verdict of Guilty; a verdict entered and affirmed by the Second Circuit with a remand on the sentence for the District Court to determine whether or not the shooting involvement the Government initially alleged against the Defendant in fact could be established by a preponderance of the evidence and taken into account as an element of sentencing under United States Code § 3553; the Government declining to do the hard work necessary to establish the connection of this Defendant to the shooting in Jamaica; the incarceration of this Defendant for more than six months; home monitoring and restraints and restriction for a period much longer than the initial sentence of twelve months of incarceration to be followed by three years of supervised release; as the Government and defense counsel for reasons known only to them repeatedly adjourned the re-sentencing in this case. Gonzo journalism alone could make sense out of this case. One long strange trip indeed.

In any event, a sentence of time served and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

_s/ **WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 2, 2021
        Brooklyn, New York